CHRISTOPHER SCOTT PAYNE
Mailing address: 1 Poehnert Rd, Boerne, TX 78006
Telephone: (213) 962-7604
Email: green.eggs.ham.run@gmail.com
Plaintiff Pro Se

FILED
CLERK, U.S. DISTRICT COURT
11/13/2026
CENTRAL DISTRICT OF CALIFORNIA
BY jd DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER SCOTT PAYNE, | ) | Case No. 2:25-cv-12282-CV-KES |
| | ) | |
| Plaintiff, | ) | PLAINTIFF'S NOTICE OF MOTION AND |
| v. | ) | MOTION FOR LEAVE TO FILE FIRST |
| CITY OF GROVER BEACH, a municipal | ) | AMENDED COMPLAINT (FED. R. CIV. P. |
| entity, | ) | 15(a)(2), 16(b)(4)); MEMORANDUM; |
| | ) | DECLARATION; [PROPOSED] ORDER |
| Defendant. | ) | |
| | ) | District Judge: Hon. Cynthia Valenzuela |
| | ) | Magistrate Judge: Hon. Karen E. Scott |
| | ) | [Submitted on the papers, L.R. 7-15] |

TO THE COURT, DEFENDANT, AND ITS COUNSEL OF RECORD:

Plaintiff Christopher Scott Payne moves under Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4) for leave to file the First Amended Complaint attached as Exhibit A. Exhibit B is a redline showing every change from the original Complaint (Dkt. 1). The motion is based on this notice, the memorandum below, the declaration of Christopher Scott Payne, the record, and any further

matter the Court considers. The conference of counsel required by L.R. 7-3 is described in the declaration (Decl. ¶ 5). Plaintiff asks that the motion be decided on the papers.

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. Background

The Court set a procedure for amending the complaint (Dkt. 51). On April 20, 2026, the City stipulated to Plaintiff filing an amended complaint (Dkt. 54), but Plaintiff did not file one (Decl. ¶ 3). The Scheduling Order set September 9, 2026 as the last day to file a motion to amend the pleadings (Dkt. 58 at 2). On that same day, the City moved for judgment on the pleadings, arguing among other things that the Complaint does not allege a City policy (Dkt. 61; Dkt. 61-1 at 5). The Report and Recommendation (Dkt. 69) is pending before the District Judge, and Plaintiff has filed Objections (Dkt. 74) and is filing a correction of the record with this motion.

### 2. What the First Amended Complaint does

The proposed First Amended Complaint narrows and clarifies the case. It (a) removes the claim based on the initial impound and removes the Doe defendants; (b) states two claims, for unreasonable continued retention of the Vehicle under the Fourth Amendment and for denial of procedural due process under the Fourteenth Amendment; (c) names the City and Chief of Police Jim Munro, in his individual capacity; (d) alleges that the Chief of Police is the City's final policymaker for vehicle releases and that the City's release conditions are its policy, which responds to the argument in Docket 61-1 at 5; (e) states Plaintiff's ownership interest accurately and consistently with the record (Dkt. 40 at 2-3) and with Plaintiff's correction of the record; and (f) states the damages sought and demands a jury. It is complete in itself and does not refer to the original Complaint. L.R. 15-2.

**3. Good cause under Rule 16(b)(4)**

Because the deadline in the Scheduling Order has passed, Plaintiff must show good cause, which turns mainly on the moving party's diligence. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Plaintiff acknowledges that he did not file an amended complaint after the City stipulated in April. In April 2026, an unknown person threatened Plaintiff, and a federal judge, with physical violence; in early May 2026, Plaintiff was assaulted and hospitalized. He reported these incidents to the Los Angeles Police Department and the United States Marshals Service. He did not feel safe working on the case diligently until he returned to the Central Coast around September 20, 2026, after the amendment deadline had passed (Decl. ¶ 3). Plaintiff can provide supporting records to the Court under seal. The specific defects the City now relies on, however, were first set out in its motion for judgment on the pleadings, filed on the last day to seek amendment (Dkt. 61). Plaintiff could not respond to those arguments by amendment before the deadline closed. He brings this motion now, before any ruling on the Report and Recommendation, so that the case can be decided on a complete and accurate pleading.

**4. Leave should be freely given under Rule 15(a)(2)**

Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The court considers undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility. Foman v. Davis, 371 U.S. 178, 182 (1962). A pro se plaintiff should be given leave to amend unless the pleading could not possibly be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

Prejudice. The amendment narrows the case. It drops a claim and the Doe defendants. Fact discovery remains open until December 18, 2026, and no trial date is near (Dkt. 58). The City has already agreed once to an amended complaint (Dkt. 54).

Futility. The First Amended Complaint pleads specific facts supporting each claim and responds directly to the City's argument that no policy is alleged. Whether those facts are ultimately proven is a question for a later stage.

Good faith. Plaintiff has corrected the inaccurate statements in his earlier filings and has drafted the First Amended Complaint to match the record.

**5. Judicial efficiency**

Granting leave will conserve the resources of the Court and the parties. An amended complaint supersedes the original. Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015). Deciding the case on the original Complaint, when a narrower and corrected pleading is available, risks further motion practice, appeal, or a new action about the same Vehicle. Resolving the claims on the First Amended Complaint lets the Court decide the case once, on accurate allegations. Fed. R. Civ. P. 1.

**6. Request**

Plaintiff asks the Court to (1) grant leave to file the First Amended Complaint attached as Exhibit A; (2) direct Plaintiff to file it as a separate document within seven days, L.R. 15-1; and (3) deny the City's motion for judgment on the pleadings (Dkt. 61) as moot. In the alternative, Plaintiff asks that any dismissal be without prejudice and with leave to amend.

DATED: November 12, 2026

Respectfully submitted,



CHRISTOPHER SCOTT PAYNE

Plaintiff Pro Se

1 Poehnert Rd, Boerne, TX 78006

Telephone: (213) 962-7604

Email: green.eggs.ham.run@gmail.com

# DECLARATION OF CHRISTOPHER SCOTT PAYNE

I, Christopher Scott Payne, declare:

1. I am the Plaintiff. I have personal knowledge of these facts and could testify to them.

2. Exhibit A is a true copy of the First Amended Complaint I ask leave to file. Exhibit B is a true copy of a redline comparing it to the original Complaint (Dkt. 1).

3. The City stipulated on April 20, 2026 to my filing an amended complaint (Dkt. 54). I did not file one. In April 2026, at a Starbucks near Washington Boulevard and Crenshaw Boulevard in Los Angeles, a person I did not know threatened physical violence against me and against a federal judge. In early May 2026, I was assaulted and was hospitalized. I do not have the exact dates of my hospital stay; I can obtain them from the hospital and will provide the records to the Court under seal on request. I reported these incidents to the Los Angeles Police Department by text to 911, and in person to the United States Marshals Service. After the threat and the assault, I did not feel safe working on this case diligently until I moved back to the Central Coast, on or about September 20, 2026.

4. The City filed its motion for judgment on the pleadings on September 9, 2026, the last day to file a motion to amend under the Scheduling Order (Dkt. 58 at 2).

5. On October 23, 2026, I emailed the City's counsel asking to confer under L.R. 7-3; counsel did not reply. On October 26, 2026, I emailed counsel an earlier draft of a proposed First Amended Complaint and a redline, and asked whether the City would stipulate to its filing. The same day, counsel responded by email that the City would oppose. The First Amended Complaint attached as Exhibit A revises that earlier draft. Among other changes, it names Chief of Police Jim Munro, rather than Commander Nelida Aceves, as the individual defendant, and

it does not include claims under California Civil Code sections 3068 and 3071-3072. No conference by telephone or video has taken place. I remain available to confer by telephone at (213) 962-7604 at any time before the Court rules.

6. The facts about my ownership and the registration of the Tesla in the First Amended Complaint are consistent with my correction of the record filed with this motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 12, 2026, in San Luis Obispo County, California.

CHRISTOPHER SCOTT PAYNE

**[PROPOSED] ORDER**

The Court has considered Plaintiff's Motion for Leave to File First Amended Complaint. Good cause appearing, the motion is GRANTED.

1. Plaintiff shall file the First Amended Complaint attached to the motion as Exhibit A, as a separate document, within seven (7) days of this Order. L.R. 15-1.

2. The First Amended Complaint is deemed served on Defendant on the date of this Order. L.R. 15-3. Defendant shall respond within the time provided by Fed. R. Civ. P. 15(a)(3).

3. Defendant's Motion for Judgment on the Pleadings (Dkt. 61), directed to the original Complaint, is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: ____________________ ______________________________

Hon. Karen E. Scott, United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I certify that on November 12, 2026, I served this MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; MEMORANDUM; DECLARATION; [PROPOSED] ORDER, with Exhibits A and B, on Defendant by placing a true copy in a sealed envelope with first-class postage prepaid in the United States mail, addressed to: Wiley R. Driskill and Karmdeep Gill, Lozano Smith, 7404 N. Spalding Avenue, Fresno, California 93720-3370; and by email to wdriskill@lozanosmith.com and kgill@lozanosmith.com.

CHRISTOPHER SCOTT PAYNE

# EXHIBIT A

[Proposed] First Amended Complaint (clean copy)

CHRISTOPHER SCOTT PAYNE
Mailing address: 1 Poehnert Rd, Boerne, TX 78006
Telephone: (213) 962-7604
Email: green.eggs.ham.run@gmail.com
Plaintiff Pro Se

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER SCOTT PAYNE, | ) | Case No. 2:25-cv-12282-CV-KES |
| | ) | |
| Plaintiff, | ) | [PROPOSED] FIRST AMENDED |
| v. | ) | COMPLAINT FOR DAMAGES AND |
| CITY OF GROVER BEACH, a municipal | ) | DECLARATORY AND INJUNCTIVE RELIEF: |
| entity; JIM MUNRO, in his | ) | (1) Unreasonable Continued Retention |
| individual capacity, | ) | (4th Am.); |
| | ) | (2) Denial of Procedural Due Process |
| Defendants. | ) | (14th Am.) |
| | ) | |
| | ) | DEMAND FOR JURY TRIAL |

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), because Plaintiff's claims arise under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. The Court may declare the parties' rights under 28 U.S.C. §§ 2201 and 2202.

2. Venue is proper in this District and Division under 28 U.S.C. §

1391(b)(1) and (2). Every Defendant is located in San Luis Obispo County, and all of the events giving rise to these claims occurred there.

## INTRODUCTION

3. On December 13, 2025, Grover Beach police arrested Plaintiff after a stop for a damaged license plate, and impounded his car, a 2019 Tesla Model 3 that he and his fiancée were living in. The City rejected Plaintiff's challenge to the impound without written notice of a hearing or a chance to present evidence, and announced the result by voicemail.

4. The City has kept the car for more than 330 days. Plaintiff has offered to have a licensed commercial carrier load it onto a flatbed and haul it away as cargo, at no cost to the City. The City will release it only if Plaintiff, who is indigent, first pays $3,000 in storage fees and obtains a permit to drive a car that no one will drive.

5. Plaintiff seeks the return of his car, a declaration that its continued retention is unconstitutional, and damages.

## PARTIES

6. Plaintiff Christopher Scott Payne bought a 2019 Tesla Model 3, Vehicle Identification Number ending in 3547 (the "Vehicle"), from CarMax on February 2, 2024, for $31,998, financed through CarMax Auto Finance, which holds legal title as lienholder (Dkt. 21 ¶¶ 3-6, 26). Plaintiff is the purchaser and has possessed, insured, and used the Vehicle, including as his home, since then.

7. Defendant City of Grover Beach ("City") is a California municipal entity in San Luis Obispo County. It operates the Grover Beach Police Department ("GBPD") and is a "person" subject to suit under 42 U.S.C. § 1983.

8. Defendant Jim Munro is, and at all relevant times was, the Chief of Police of GBPD. He is sued in his individual capacity. At all relevant times he acted under color of state law.

## FACTUAL ALLEGATIONS

### A. The Stop, Arrest, and Impound

9. On December 13, 2025, Plaintiff was driving the Vehicle in Grover Beach, California. He held a valid California driver's license.

10. A GBPD officer stopped the Vehicle because its rear license plate was damaged. A third party had accidentally damaged the plate shortly before the stop, and Plaintiff had not yet been able to replace it.

11. During the stop, Plaintiff asked the officer about the reason for the stop and the officer's actions. He did not physically resist. Officers handcuffed Plaintiff and then arrested him under California Penal Code § 148(a)(1) for resisting, delaying, or obstructing an officer.

12. The People later filed a misdemeanor charge against Plaintiff under Penal Code § 148(a)(1) in the San Luis Obispo County Superior Court, People v. Payne, No. 25M-10436.

13. Andrew Joseph Ibarra was at the scene. He held a valid California driver's license. Plaintiff asked the officers to release the Vehicle to Mr. Ibarra, and Mr. Ibarra told the officers he was able and willing to drive it away.

14. The officers refused. They ordered the Vehicle impounded as a "general impoundment due to arrest" and had it towed to Four Corners Tow, 909 South 4th Street, Grover Beach, California.

15. The Vehicle was not evidence of any crime and was not needed for any investigation.

16. Plaintiff and his fiancée were living in the Vehicle. It held their bedding, clothing, documents, family photographs, and Plaintiff's daily prescription medications for serious medical conditions. When the Vehicle was taken, Plaintiff and his fiancée became homeless and slept outdoors in San Luis Obispo County, in nighttime temperatures of roughly 40 to 50 degrees Fahrenheit, and Plaintiff went without his medications. Plaintiff was later allowed

to retrieve some of his belongings from the Vehicle (Dkt. 40 at 3).

**B. The December 22, 2025 Post-Storage Hearing**

17. California Vehicle Code § 22852 entitles the owner of an impounded vehicle to a post-storage hearing to decide whether there was probable cause to impound it.

18. On December 19, 2025, Plaintiff faxed GBPD a written request for a post-storage hearing, contesting the impound and asking for release of the Vehicle. The fax confirmation shows that GBPD received it (Dkt. 1, Exs. 2-3).

19. On December 22, 2025, GBPD Commander Nelida Aceves spoke with Plaintiff by telephone about his hearing request and asked about the Vehicle's registration (see Dkt. 16 at 8-9). GBPD gave Plaintiff no written notice of any hearing date, time, place, or procedure. On information and belief, no record of the proceeding was made.

20. After hours that day, Commander Aceves left Plaintiff a voicemail saying that, after reading the police report and reviewing camera footage, he found the stop and impound proper and would not waive the release fee (Dkt. 1, Ex. 4). The officer decided the matter on material Plaintiff had not seen. Plaintiff has never received a written decision.

**C. The City Keeps the Vehicle**

21. Plaintiff filed this action on December 29, 2025.

22. On or about January 9, 2026, the Vehicle was moved from Four Corners Tow to a salvage facility operated by or associated with Copart / Timo's Auto Wrecking.

23. On January 20, 2026, the Court ordered the City to retrieve and preserve the Vehicle (Dkt. 25). The City obtained possession of the Vehicle on January 26, 2026, and has kept it on City property ever since (Dkt. 46, Ex. A ¶ 2).

24. Plaintiff began registering the Vehicle in California in May 2025 but has not completed the process; the registration fee and the VIN inspection remain

outstanding, and the Vehicle's temporary permit expired on November 11, 2025 (see Dkt. 1, Ex. 4; Dkt. 40 at 2-3). The Vehicle's windshield is also damaged (Dkt. 16, Chavez Decl. ¶ 2; Dkt. 36 ¶ 3). For these reasons Plaintiff does not seek to drive the Vehicle anywhere.

25. Plaintiff is willing to have the Vehicle removed by a licensed commercial flatbed carrier, at no cost to the City. The carrier would load the Vehicle on City property and haul it as cargo to a private repair facility in Santa Maria, California. Under this offer the Vehicle would never be driven on a public road. At the January 27, 2026 hearing, Plaintiff told the Court he would arrange for the Vehicle to be towed (Dkt. 40 at 3).

26. At the January 27, 2026 hearing, Plaintiff told the Court he was willing to complete registration, arrange for the Vehicle to be towed, and discuss an acceptable payment plan with the City, and the City's counsel agreed to continue those discussions (Dkt. 40 at 3).

27. On February 2, 2026, Defendant Munro, as Chief of Police, sent Plaintiff a letter setting the conditions for release of the Vehicle (Dkt. 46, Ex. B). The letter requires Plaintiff to (1) obtain a temporary operating permit from the Department of Motor Vehicles "so you can move the vehicle"; (2) pay "fees associated with the storage of the vehicle," stated as $3,000.00; and (3) provide a bill of sale or other proof of ownership. The City has since described these as steps Plaintiff must take "to operate his vehicle under California law" (Dkt. 68 at 3).

28. As to the third condition, Plaintiff holds the February 2, 2024 bill of sale and a DMV record showing that he began, but did not complete, registration of the Vehicle in California, and he will provide them to the City.

29. Plaintiff did not send a written reply to the February 2 letter.

30. The first condition serves no purpose. A temporary operating permit allows a vehicle to be driven on public roads. A vehicle carried on a flatbed is not

being driven, and nothing about the City's interests requires a permit for it.

31. Plaintiff cannot meet the second condition. He is indigent: the Court granted him leave to proceed in forma pauperis (Dkt. 15), his only income is public assistance, and he has no other assets. Conditioning release on a payment Plaintiff cannot make means the City will keep the Vehicle indefinitely.

32. The $3,000 is not storage the City provided. According to Commander Aceves, Four Corners Tow began a lien on the Vehicle on December 24, 2025, eleven days after the impound and while Plaintiff's hearing request and this case were pending; the lien "cleared" on January 8, 2026; Timo's Auto Wrecking took the Vehicle on January 9, 2026; and after this Court's January 20, 2026 order, the City paid Timo's Auto Wrecking $3,000 to get the Vehicle back (Dkt. 31 ¶¶ 3-6). The lien cleared and the Vehicle left the tow yard while this Court's December 31, 2025 order was in effect, which directed the City to "take no action prior to the Court's ruling on the Application that impairs the ability to afford Plaintiff complete relief" (Dkt. 8 at 2). The Court ruled on January 15, 2026 (Dkt. 19). The City now demands that Plaintiff repay that amount as a condition of release. The City has never given Plaintiff an itemized statement of the $3,000 or any opportunity to contest it.

33. Defendant Munro personally set these conditions and signed the letter imposing them. On information and belief, he made or approved the decision to refuse release to Plaintiff's carrier unless every condition was met.

34. On information and belief, the Chief of Police has final policymaking authority for the City over the release of impounded vehicles. The refusal to release the Vehicle reflects the City's policy, set or approved by Defendant Munro, of conditioning the release of any impounded vehicle on payment of storage fees and compliance with requirements for driving it, even when the owner will remove it by commercial carrier and cannot pay. The City has adopted that position in its filings in this case (Dkts. 46, 68), which confirms that the

conditions are the City's own deliberate choice and not one officer's departure from City practice.

35. The City has told the Court only that the Vehicle is kept "on City property" (Dkt. 46, Ex. A ¶ 2).

36. An electric vehicle left without charging for months loses battery charge. On information and belief, the Vehicle's high-voltage battery and 12-volt system have discharged during its storage, and the Vehicle has deteriorated. The extent of the damage cannot be known until the Vehicle is inspected.

**D. Harm to Plaintiff**

37. The Vehicle was Plaintiff's home and his only means of transportation. Since December 13, 2025, Plaintiff has been without shelter and without a way to get to medical care, work, and services.

38. Plaintiff has incurred out-of-pocket costs trying to recover the Vehicle, in an amount to be proven at trial.

39. The City's continued retention of the Vehicle has caused Plaintiff emotional distress, anxiety, and disruption of his daily life, made worse by the loss of his shelter and, for a time, his medications.

## FIRST CLAIM FOR RELIEF

### Unreasonable Continued Retention: Fourth Amendment, 42 U.S.C. § 1983

### (Against the City and Defendant Munro)

40. Plaintiff incorporates the paragraphs above.

41. A seizure that is lawful at its start can become unreasonable if it continues after its justification ends. Continued retention of an impounded vehicle is a seizure that requires its own justification.

42. Whatever justification the City once had for holding the Vehicle ended no later than when Plaintiff offered to have it removed by a licensed commercial carrier. From then on, holding the Vehicle served no safety, evidentiary, or community-caretaking purpose. Holding it only to compel payment of fees that

Plaintiff cannot pay, and to compel a driving permit for a vehicle that will not be driven, is unreasonable.

43. Defendant Munro personally set the release conditions and directed or approved the continued retention after Plaintiff's offer.

44. The City is liable because the continued retention results from its policy, set or approved by its final policymaker for vehicle releases, as described above.

45. As a direct result, Plaintiff suffered the damages described below.

**SECOND CLAIM FOR RELIEF**

**Denial of Procedural Due Process: Fourteenth Amendment, 42 U.S.C. § 1983**

**(Against the City and Defendant Munro)**

46. Plaintiff incorporates the paragraphs above.

47. Plaintiff has a property interest in the Vehicle. Before the government may continue to deprive a person of property, due process requires notice and a meaningful opportunity to be heard.

48. Defendants denied Plaintiff that opportunity in two ways. First, the City decided Plaintiff's post-storage challenge on December 22, 2025, without written notice, without a meaningful opportunity to present evidence, and on material Plaintiff never saw, and gave him no written decision. Second, the City and Defendant Munro have conditioned the Vehicle's release on paying $3,000 in fees without ever itemizing them or giving Plaintiff any way to contest them.

49. The City is liable because the December 22 decision was made under its procedures for post-storage hearings, and because the fee condition was set by its final policymaker for vehicle releases.

50. As a direct result, Plaintiff suffered the damages described below.

**DECLARATORY AND INJUNCTIVE RELIEF**

51. Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201-2202 and injunctive relief as remedies for the First and Second Claims. An actual and

continuing controversy exists over whether the City may keep withholding the Vehicle from a licensed commercial carrier unless Plaintiff pays storage fees and obtains a driving permit. Each day the City holds the Vehicle, it deteriorates further and Plaintiff remains without shelter. Money damages cannot fully repair that harm, so Plaintiff has no adequate remedy at law.

**DAMAGES**

52. As a direct result of Defendants' conduct alleged in the First and Second Claims, Plaintiff has suffered, and continues to suffer, the following harms. Plaintiff seeks compensatory damages from the City and Defendant Munro, jointly and severally, in an amount to be proven at trial, including:

(a) Loss of use. The loss of use of the Vehicle as transportation and shelter for the period the City has held it in violation of Plaintiff's rights, as alleged above, measured by the reasonable rental value of comparable substitute transportation and, to the extent the Vehicle served as Plaintiff's shelter, the reasonable cost of substitute lodging.

(b) Damage to the Vehicle. The reasonable cost to repair any damage to the Vehicle caused by its storage and handling while in the City's custody or control, including any damage to the battery, as shown by inspection. If the Vehicle is not returned, or cannot be economically repaired, Plaintiff seeks instead the fair market value of his interest in the Vehicle at the time the City's retention became unlawful.

(c) Personal property. The value of personal property, including medications, that was lost, damaged, or had to be replaced because of the City's continued retention of the Vehicle.

(d) Release charges. Any towing, storage, release, or permit charges Plaintiff is required to pay as a condition of the Vehicle's release.

(e) Recovery costs. Reasonable out-of-pocket costs Plaintiff has incurred trying to recover the Vehicle.

(f) Emotional distress. Damages for emotional distress, anxiety, and disruption of Plaintiff's daily life caused by Defendants' conduct.

53. Plaintiff will provide a computation of each category of damages, with supporting documents, as required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii).

54. If Plaintiff does not prove actual injury from a constitutional violation, Plaintiff seeks nominal damages for that violation.

55. Defendant Munro acted with reckless or callous indifference to Plaintiff's federally protected rights. Plaintiff therefore seeks punitive damages against Defendant Munro in his individual capacity, in an amount sufficient to punish and deter. Plaintiff does not seek punitive damages against the City.

## PRAYER FOR RELIEF

Plaintiff asks the Court to enter judgment in his favor and against Defendants, and to award:

1. A declaration that the City's continued retention of the Vehicle, after Plaintiff's offer to have it removed by a licensed commercial carrier, violates the Fourth and Fourteenth Amendments;

2. A preliminary and permanent injunction ordering the City to release the Vehicle, with its keys or key cards and any personal property inside it, to a licensed commercial carrier designated by Plaintiff, without requiring Plaintiff to obtain an operating permit or pay storage fees as a condition of release;

3. Compensatory damages against the City and Defendant Munro, jointly and severally, in an amount to be proven at trial;

4. Nominal damages for any violation for which actual injury is not proven;

5. Punitive damages against Defendant Munro in his individual capacity only;

6. Prejudgment interest as allowed by law, and post-judgment interest under 28 U.S.C. § 1961;

7. Costs of suit under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920;

8. Reasonable attorney's fees under 42 U.S.C. § 1988 if Plaintiff retains counsel; and

9. Any other relief the Court finds just and proper.

**DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38(b) and Local Rule 38-1, Plaintiff demands a jury trial on all issues so triable.

DATED: November 12, 2026

Respectfully submitted,

______________________________

CHRISTOPHER SCOTT PAYNE
Plaintiff Pro Se
1 Poehnert Rd, Boerne, TX 78006
Telephone: (213) 962-7604
Email: green.eggs.ham.run@gmail.com

**VERIFICATION**

I, Christopher Scott Payne, am the Plaintiff in this action. I have read this First Amended Complaint. The facts stated in it are true of my own knowledge, except those stated on information and belief, and as to those I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 12, 2026, in San Luis Obispo County, California.

____________________________________

CHRISTOPHER SCOTT PAYNE

# EXHIBIT B

Redline: [Proposed] First Amended Complaint compared to Complaint (Dkt. 1)

CHRISTOPHER SCOTT PAYNE
Mailing address: 1 Poehnert Rd, Boerne, TX 78006
Telephone: (213) 962-7604
Email: green.eggs.ham.run@gmail.com
Plaintiff Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER SCOTT PAYNE, | ) | Case No. 2:25-cv-12282-CV-KES |
| | ) | |
| Plaintiff, | ) | REDLINE: [PROPOSED] FAC |
| v. | ) | COMPLAINT FOR DAMAGES AND |
| CITY OF GROVER BEACH, a municipal | ) | DECLARATORY AND INJUNCTIVE RELIEF: |
| entity; JIM MUNRO, in his | ) | (1) Unreasonable Continued Retention |
| individual capacity, | ) | (4th Am.); |
| | ) | (2) Denial of Procedural Due Process |
| Defendants. | ) | (14th Am.) |
| | ) | |
| | ) | DEMAND FOR JURY TRIAL |

Key: text in red with strikethrough is deleted from the Complaint (Dkt. 1); text in blue with underline is added in the [Proposed] First Amended Complaint. The caption shown is the FAC caption. Dkt. 1 exhibits are not part of this comparison.

~~Petitioner Christopher Scott Payne ("Petitioner"), appearing in propria persona, brings this emergency action against Respondent City of Grover Beach ("Respondent") and alleges as follows:~~

~~I. NATURE OF ACTION~~

~~1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 to redress violations of Petitioner's rights under the Fourth and Fourteenth Amendments to the United States Constitution. Petitioner seeks emergency injunctive relief, declaratory relief, and compensatory damages arising from Respondent's unlawful seizure and continued retention of Petitioner's motor vehicle following an administrative hearing conducted in violation of fundamental due process protections.~~

~~2. On December 13, 2025, Respondent's police officers arrested Petitioner without physical resistance and impounded Petitioner's 2019 Tesla Model 3 motor vehicle. Respondent subsequently conducted an administrative hearing on December 22, 2025, to determine whether the impoundment should be upheld. The hearing was conducted ex parte, without notice to Petitioner of the hearing date, time, location, or procedures, and without affording Petitioner any opportunity to participate, present evidence, or confront adverse evidence. Respondent provided no written decision with findings of fact or conclusions of law.~~

~~3. As a direct and proximate result of Respondent's constitutional violations, Petitioner has been deprived of shelter, forced into homelessness for fifteen (15) consecutive days, denied access to essential prescription medications valued at approximately Two Thousand Five Hundred Dollars ($2,500.00), and deprived of personal property valued at approximately Four Thousand Five Hundred Dollars ($4,500.00). Petitioner's vehicle faces imminent risk of lien sale, which would result in total and irreversible loss.~~

~~4. Petitioner brings this emergency action seeking immediate temporary restraining order relief to prevent irreparable harm to Petitioner's health, safety, and property rights pending full adjudication of the constitutional claims asserted herein.~~

**~~II.~~ JURISDICTION AND VENUE**

~~5. This Court has subject matter jurisdiction over Petitioner's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3)~~

~~(civil rights jurisdiction).~~

~~6. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201 and injunctive relief pursuant to Federal Rule of Civil Procedure 65.~~

1. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), because Plaintiff's claims arise under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. The Court may declare the parties' rights under 28 U.S.C. §§ 2201 and 2202.

~~7.~~ 2. Venue is proper in this District ~~pursuant to~~ and Division under 28 U.S.C. § ~~1391(b)(2) because a substantial part~~ 1391(b)(1) and (2). Every Defendant is located in San Luis Obispo County, and all of the events ~~or omissions~~ giving rise to ~~Petitioner's~~ these claims occurred ~~within this judicial district, and Respondent is located within this judicial district.~~ there.

~~8. Petitioner seeks damages in an amount exceeding the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, calculated as follows: (a) direct economic losses including vehicle impoundment fees, towing charges, daily storage fees (currently accruing at $80.83 per day), replacement value of medications and property at risk of lien sale (approximately $14,867.83 as of December 28, 2025, and increasing daily); (b) compensatory damages for violations of clearly established constitutional rights, including emotional distress, pain and suffering, and mental anguish resulting from forced homelessness, medication deprivation, and constitutional violations (estimated at $30,000.00 to $60,000.00); and (c) costs and attorney fees pursuant to 42 U.S.C. § 1988.~~

**INTRODUCTION**

3. On December 13, 2025, Grover Beach police arrested Plaintiff after a stop for a damaged license plate, and impounded his car, a 2019 Tesla Model 3 that he and his fiancée were living in. The City rejected Plaintiff's challenge to the impound without written notice of a hearing or a chance to present evidence, and announced the result by voicemail.

4. The City has kept the car for more than 330 days. Plaintiff has offered to have a licensed commercial carrier load it onto a flatbed and haul it away as cargo, at no cost to the City. The City will release it only if Plaintiff, who is indigent, first pays $3,000 in storage fees and obtains a permit to drive a car that no one will drive.

5. Plaintiff seeks the return of his car, a declaration that its continued retention is unconstitutional, and damages.

## ~~III.~~ PARTIES

~~9. Petitioner Christopher Scott Payne is an individual residing in San Luis Obispo County, California. Petitioner is the registered owner of the motor vehicle that is the subject of this action. Petitioner appears in this action in propria persona.~~

~~10. Respondent City of Grover Beach is a municipal corporation organized and existing under the laws of the State of California, located in Grover Beach, San Luis Obispo County, California. At all times relevant to this action, Respondent acted under color of state law within the meaning of 42 U.S.C. § 1983.~~

6. Plaintiff Christopher Scott Payne bought a 2019 Tesla Model 3, Vehicle Identification Number ending in 3547 (the "Vehicle"), from CarMax on February 2, 2024, for $31,998, financed through CarMax Auto Finance, which holds legal title as lienholder (Dkt. 21 ¶¶ 3-6, 26). Plaintiff is the purchaser and has possessed, insured, and used the Vehicle, including as his home, since then.

7. Defendant City of Grover Beach ("City") is a California municipal entity in San Luis Obispo County. It operates the Grover Beach Police Department ("GBPD") and is a "person" subject to suit under 42 U.S.C. § 1983.

8. Defendant Jim Munro is, and at all relevant times was, the Chief of Police of GBPD. He is sued in his individual capacity. At all relevant times he acted under color of state law.

## ~~IV.~~ FACTUAL ALLEGATIONS ~~COMMON TO ALL CLAIMS~~

**A. The December 13, 2025 Traffic Stop, Arrest, and Vehicle Impoundment Impound**

11. On December 13, 2025, Petitioner was operating his 2019 Tesla Model 3 motor vehicle, Vehicle Identification Number 5YJ3E1EB5KF493547 ("the Vehicle"), within the City of Grover Beach, California.

12. A police officer employed by Respondent City of Grover Beach initiated a traffic stop of the Vehicle based on an alleged defaced rear license plate.

13. The rear license plate had been accidentally damaged by a third party immediately prior to the traffic stop. The damage was not intentional and Petitioner had not yet had opportunity to obtain a replacement plate.

14. At the time of the traffic stop, Petitioner possessed a valid California driver's license. A true and correct copy of Petitioner's driver's license is attached hereto as Exhibit 1 and incorporated herein by reference.

9. On December 13, 2025, Plaintiff was driving the Vehicle in Grover Beach, California. He held a valid California driver's license.

10. A GBPD officer stopped the Vehicle because its rear license plate was damaged. A third party had accidentally damaged the plate shortly before the stop, and Plaintiff had not yet been able to replace it.

15. 11. During the traffic stop, Petitioner Plaintiff asked questions of the officer regarding about the basis reason for the stop and the officer's actions. He did not physically resist. Officers handcuffed Plaintiff and then arrested him under California Penal Code § 148(a)(1) for resisting, delaying, or obstructing an officer.

16. The officer arrested Petitioner for alleged violation of California Penal Code section 148(a) (resisting, delaying, or obstructing a peace officer). Petitioner did not engage in any physical resistance or obstruction, and was already handcuffed prior to the officers stating that Petitioner was resisting.

17. Following Petitioner's arrest, Respondent's officer ordered the Vehicle impounded as a "general impoundment due to arrest."

12. The People later filed a misdemeanor charge against Plaintiff under Penal Code § 148(a)(1) in the San Luis Obispo County Superior Court, People v. Payne, No. 25M-10436.

13. Andrew Joseph Ibarra was at the scene. He held a valid California driver's license. Plaintiff asked the officers to release the Vehicle to Mr. Ibarra, and Mr. Ibarra told the officers he was able and willing to drive it away.

~~18.~~ 14. The officers refused. They ordered the Vehicle ~~was~~ impounded as a "general impoundment due to arrest" and had it towed to Four Corners Tow, ~~located at~~ 909 South 4th Street, Grover Beach, ~~California 93433.~~ California.

~~19. As of the date of this Complaint, no criminal charges have been filed against Petitioner arising from the December 13, 2025 arrest. Fifteen (15) days have elapsed since the arrest without prosecution.~~

~~**B. Property Contained in the Impounded Vehicle**~~

~~20. At the time of impoundment, the Vehicle contained Petitioner's essential personal property, including but not limited to: a. Prescription medications with an approximate replacement value of Two Thousand Five Hundred Dollars ($2,500.00), including Biktarvy 200-25 daily for HIV, Bactrim DS 800-160 daily for prophylaxis for PCP pneumonia, Lamictal for mood stabilization, and Gabapentin 200mg daily; b. Personal property, clothing, documents, and other belongings with an approximate value of Four Thousand Five Hundred Dollars ($4,500.00); c. Family photos and legal documents.~~

~~21. The medications contained in the Vehicle are essential for treatment of Petitioner's diagnosed medical conditions, including HIV, prophylaxis for PCP pneumonia, mood stabilization, and Complex PTSD requiring continuous treatment.~~

~~22. Petitioner last took the essential medications on December 12, 2025.~~

~~23. Since being deprived of access to the medications, Petitioner has experienced gastrointestinal distress, mood destabilization, and panic attacks.~~

**C. Request for Administrative Hearing**

24. California Vehicle Code section 22852 provides that a registered owner whose vehicle has been impounded may request a post-impoundment administrative hearing to determine the validity of the impoundment.

25. On December 19, 2025, Petitioner timely submitted a written request for an administrative hearing to contest the Vehicle impoundment. A true and correct copy of the hearing request is attached hereto as Exhibit 2 and incorporated herein by reference.

26. Petitioner submitted the hearing request via facsimile transmission to Respondent. A true and correct copy of the facsimile transmission confirmation demonstrating receipt by Respondent is attached hereto as Exhibit 3 and incorporated herein by reference.

15. The Vehicle was not evidence of any crime and was not needed for any investigation.

16. Plaintiff and his fiancée were living in the Vehicle. It held their bedding, clothing, documents, family photographs, and Plaintiff's daily prescription medications for serious medical conditions. When the Vehicle was taken, Plaintiff and his fiancée became homeless and slept outdoors in San Luis Obispo County, in nighttime temperatures of roughly 40 to 50 degrees Fahrenheit, and Plaintiff went without his medications. Plaintiff was later allowed to retrieve some of his belongings from the Vehicle (Dkt. 40 at 3).

**D. B. The December 22, 2025 Ex Parte Administrative Post-Storage Hearing**

27. California Vehicle Code section 22852(e) requires that the administrative hearing be conducted in accordance with due process of law and that the hearing officer provide the vehicle owner with adequate notice and opportunity to be heard.

28. On December 22, 2025, Respondent conducted an administrative hearing regarding the Vehicle impoundment.

29. Respondent failed to provide Petitioner with any advance written notice of the date, time, or location of the December 22, 2025 hearing.

~~30. Respondent failed to provide Petitioner with notice of the hearing procedures, Petitioner's right to present evidence, Petitioner's right to testify, or Petitioner's right to cross-examine adverse witnesses.~~

~~31. The December 22, 2025 hearing was conducted entirely ex parte, without Petitioner's presence, participation, or knowledge that the hearing was occurring.~~

~~32. Respondent did not afford Petitioner any opportunity to present witnesses, testimony, or documentary evidence in support of Petitioner's position that the impoundment was unlawful.~~

~~33. Respondent did not afford Petitioner any opportunity to examine or cross-examine any evidence or witnesses presented in support of upholding the impoundment.~~

~~34. Following the ex parte hearing, Respondent's hearing officer determined to uphold the Vehicle impoundment.~~

~~35. Respondent communicated the hearing outcome to Petitioner solely by means of a voicemail message left on Petitioner's telephone.~~

~~36. Respondent has not provided Petitioner with any written decision setting forth findings of fact, conclusions of law, or the evidentiary or legal basis for upholding the impoundment.~~

~~37. Upon information and belief, Respondent did not create a transcript, audio recording, or other record of the December 22, 2025 administrative hearing.~~

~~38. California Vehicle Code section 22852(e) provides that the decision of the hearing officer is final, with no further administrative appeal available.~~

~~39. Petitioner has exhausted all available administrative remedies. No further administrative proceedings are available under California law.~~

~~**E. Resulting Harms to Petitioner**~~

~~As a direct and proximate result of Respondent's unlawful retention of the Vehicle following the constitutionally deficient administrative hearing, Petitioner has suffered and continues to suffer the following harms:~~

a. Homelessness: Petitioner and Petitioner's fiancée have been without shelter for fifteen (15) consecutive days, from December 13, 2025 to the present, sleeping on public sidewalks in San Luis Obispo County, California;

b. Exposure to Dangerous Weather Conditions: During the period of homelessness, Petitioner has been exposed to nighttime temperatures ranging from approximately forty (40) to fifty (50) degrees Fahrenheit, without adequate shelter or protection from the elements;

c. Medication Deprivation: Petitioner has been completely deprived of access to essential prescription medications for fifteen (15) consecutive days, creating serious and documented health risks including rebound anxiety, panic attacks, pneumonia, and AIDS-related illnesses;

d. Property Loss Risk: The Vehicle and all property contained therein face imminent risk of total loss through lien sale proceedings pursuant to California Civil Code section 3071;

e. Financial Harm: Petitioner has incurred and continues to incur substantial financial losses, including: i. Initial towing fee of Five Hundred Seventy-Four Dollars and Fifty-Five Cents ($574.55); ii. Daily storage fees of Eighty Dollars and Eighty-Three Cents ($80.83) per day, totaling One Thousand Eight Hundred Sixty-Seven Dollars and Eighty-Three Cents ($1,867.83) as of December 28, 2025, and increasing by $80.83 for each additional day the Vehicle remains impounded;

40. iii. Loss of use of the Vehicle for transportation, shelter, and storage of personal property;

f. Emotional Distress: Petitioner has suffered and continues to suffer severe emotional distress, humiliation, anxiety, and mental anguish as a direct result of the forced homelessness, medication deprivation, and ongoing violation of constitutional rights;

g. Exacerbated Vulnerability: Both Petitioner and Petitioner's fiancée are neurodivergent individuals with autism spectrum disorders, rendering them particularly

vulnerable to the harms resulting from homelessness and deprivation of stability and routine.

**F. Respondent's Policies, Customs, and Practices**

41. Upon information and belief, Respondent City of Grover Beach maintains policies, customs, and practices regarding vehicle impoundment administrative hearings that systematically violate vehicle owners' procedural due process rights.

42. Upon information and belief, Respondent's policies, customs, and practices include the following: a. Conducting impoundment administrative hearings without providing vehicle owners with advance written notice of the hearing date, time, and location; b. Failing to provide vehicle owners with notice of hearing procedures, including the right to present evidence, the right to testify, and the right to cross-examine witnesses; c. Conducting hearings ex parte without the vehicle owner's knowledge or participation; d. Failing to create transcripts, audio recordings, or other records of administrative hearings; e. Failing to issue written decisions containing findings of fact, conclusions of law, or explanation of the evidentiary and legal basis for the hearing officer's determination; f. Communicating hearing outcomes solely via voicemail or other informal means without providing written documentation.

43. Upon information and belief, the policies, customs, and practices described in paragraph 42 are not isolated incidents but constitute systematic patterns affecting multiple vehicle owners subjected to impoundment proceedings conducted by or on behalf of Respondent.

44. Upon information and belief, Respondent's policies, customs, and practices were implemented or ratified by Respondent's final policymaking authority, including the City Council, City Manager, Police Chief, or other designated municipal official with authority to establish or approve procedures for vehicle impoundment hearings.

45. Respondent's policies, customs, and practices demonstrate deliberate indifference to vehicle owners' clearly established constitutional rights to procedural due process.

46. Respondent's policies, customs, and practices directly caused the constitutional violations alleged herein and were the moving force behind the deprivation of Petitioner's constitutional rights.

17. California Vehicle Code § 22852 entitles the owner of an impounded vehicle to a post-storage hearing to decide whether there was probable cause to impound it.

18. On December 19, 2025, Plaintiff faxed GBPD a written request for a post-storage hearing, contesting the impound and asking for release of the Vehicle. The fax confirmation shows that GBPD received it (Dkt. 1, Exs. 2-3).

19. On December 22, 2025, GBPD Commander Nelida Aceves spoke with Plaintiff by telephone about his hearing request and asked about the Vehicle's registration (see Dkt. 16 at 8-9). GBPD gave Plaintiff no written notice of any hearing date, time, place, or procedure. On information and belief, no record of the proceeding was made.

20. After hours that day, Commander Aceves left Plaintiff a voicemail saying that, after reading the police report and reviewing camera footage, he found the stop and impound proper and would not waive the release fee (Dkt. 1, Ex. 4). The officer decided the matter on material Plaintiff had not seen. Plaintiff has never received a written decision.

**C. The City Keeps the Vehicle**

21. Plaintiff filed this action on December 29, 2025.

22. On or about January 9, 2026, the Vehicle was moved from Four Corners Tow to a salvage facility operated by or associated with Copart / Timo's Auto Wrecking.

23. On January 20, 2026, the Court ordered the City to retrieve and preserve the Vehicle (Dkt. 25). The City obtained possession of the Vehicle on January 26, 2026, and has kept it on City property ever since (Dkt. 46, Ex. A ¶ 2).

24. Plaintiff began registering the Vehicle in California in May 2025 but has not completed the process; the registration fee and the VIN inspection remain outstanding, and the Vehicle's temporary permit expired on November 11, 2025 (see Dkt. 1, Ex. 4;

Dkt. 40 at 2-3). The Vehicle's windshield is also damaged (Dkt. 16, Chavez Decl. ¶ 2; Dkt. 36 ¶ 3). For these reasons Plaintiff does not seek to drive the Vehicle anywhere.

25. Plaintiff is willing to have the Vehicle removed by a licensed commercial flatbed carrier, at no cost to the City. The carrier would load the Vehicle on City property and haul it as cargo to a private repair facility in Santa Maria, California. Under this offer the Vehicle would never be driven on a public road. At the January 27, 2026 hearing, Plaintiff told the Court he would arrange for the Vehicle to be towed (Dkt. 40 at 3).

26. At the January 27, 2026 hearing, Plaintiff told the Court he was willing to complete registration, arrange for the Vehicle to be towed, and discuss an acceptable payment plan with the City, and the City's counsel agreed to continue those discussions (Dkt. 40 at 3).

27. On February 2, 2026, Defendant Munro, as Chief of Police, sent Plaintiff a letter setting the conditions for release of the Vehicle (Dkt. 46, Ex. B). The letter requires Plaintiff to (1) obtain a temporary operating permit from the Department of Motor Vehicles "so you can move the vehicle"; (2) pay "fees associated with the storage of the vehicle," stated as $3,000.00; and (3) provide a bill of sale or other proof of ownership. The City has since described these as steps Plaintiff must take "to operate his vehicle under California law" (Dkt. 68 at 3).

28. As to the third condition, Plaintiff holds the February 2, 2024 bill of sale and a DMV record showing that he began, but did not complete, registration of the Vehicle in California, and he will provide them to the City.

29. Plaintiff did not send a written reply to the February 2 letter.

30. The first condition serves no purpose. A temporary operating permit allows a vehicle to be driven on public roads. A vehicle carried on a flatbed is not being driven, and nothing about the City's interests requires a permit for it.

31. Plaintiff cannot meet the second condition. He is indigent: the Court granted him leave to proceed in forma pauperis (Dkt. 15), his only income is public assistance,

and he has no other assets. Conditioning release on a payment Plaintiff cannot make means the City will keep the Vehicle indefinitely.

32. The $3,000 is not storage the City provided. According to Commander Aceves, Four Corners Tow began a lien on the Vehicle on December 24, 2025, eleven days after the impound and while Plaintiff's hearing request and this case were pending; the lien "cleared" on January 8, 2026; Timo's Auto Wrecking took the Vehicle on January 9, 2026; and after this Court's January 20, 2026 order, the City paid Timo's Auto Wrecking $3,000 to get the Vehicle back (Dkt. 31 ¶¶ 3-6). The lien cleared and the Vehicle left the tow yard while this Court's December 31, 2025 order was in effect, which directed the City to "take no action prior to the Court's ruling on the Application that impairs the ability to afford Plaintiff complete relief" (Dkt. 8 at 2). The Court ruled on January 15, 2026 (Dkt. 19). The City now demands that Plaintiff repay that amount as a condition of release. The City has never given Plaintiff an itemized statement of the $3,000 or any opportunity to contest it.

33. Defendant Munro personally set these conditions and signed the letter imposing them. On information and belief, he made or approved the decision to refuse release to Plaintiff's carrier unless every condition was met.

34. On information and belief, the Chief of Police has final policymaking authority for the City over the release of impounded vehicles. The refusal to release the Vehicle reflects the City's policy, set or approved by Defendant Munro, of conditioning the release of any impounded vehicle on payment of storage fees and compliance with requirements for driving it, even when the owner will remove it by commercial carrier and cannot pay. The City has adopted that position in its filings in this case (Dkts. 46, 68), which confirms that the conditions are the City's own deliberate choice and not one officer's departure from City practice.

35. The City has told the Court only that the Vehicle is kept "on City property" (Dkt. 46, Ex. A ¶ 2).

36. An electric vehicle left without charging for months loses battery charge. On

information and belief, the Vehicle's high-voltage battery and 12-volt system have discharged during its storage, and the Vehicle has deteriorated. The extent of the damage cannot be known until the Vehicle is inspected.

**D. Harm to Plaintiff**

37. The Vehicle was Plaintiff's home and his only means of transportation. Since December 13, 2025, Plaintiff has been without shelter and without a way to get to medical care, work, and services.

38. Plaintiff has incurred out-of-pocket costs trying to recover the Vehicle, in an amount to be proven at trial.

39. The City's continued retention of the Vehicle has caused Plaintiff emotional distress, anxiety, and disruption of his daily life, made worse by the loss of his shelter and, for a time, his medications.

**~~V.~~ FIRST CLAIM FOR RELIEF**

**~~VIOLATION OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983)~~**

~~47. Petitioner incorporates by reference and realleges paragraphs 1 through 46 as though fully set forth herein.~~

~~48. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.~~

~~49. The procedural due process protections of the Fourteenth Amendment apply to municipal corporations acting under color of state law. Monell v. Department of Social Services, 436 U.S. 658, 690 (1978).~~

~~50. Petitioner possesses a constitutionally protected property interest in the Vehicle. Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 9 (1978) (property interests protected by due process are created by state law).~~

~~51. The minimum requirements of procedural due process include: (a) notice reasonably calculated to apprise interested parties of the pendency of the action and~~

afford them an opportunity to present their objections, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); and (b) an opportunity to be heard at a meaningful time and in a meaningful manner, Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

52. Respondent deprived Petitioner of procedural due process by conducting the December 22, 2025 administrative hearing without providing Petitioner with constitutionally adequate notice of the hearing.

53. Respondent deprived Petitioner of procedural due process by conducting the December 22, 2025 administrative hearing entirely ex parte, without affording Petitioner any opportunity to be heard, to present evidence, to testify, or to confront and cross-examine adverse witnesses.

54. Respondent deprived Petitioner of procedural due process by failing to provide Petitioner with a written decision setting forth findings of fact, conclusions of law, or the evidentiary and legal basis for the hearing officer's determination. Topanga Association for a Scenic Community v. County of Los Angeles, 11 Cal. 3d 506, 514-515 (1974) (administrative findings required as safeguard against arbitrary decisionmaking).

55. Respondent deprived Petitioner of procedural due process by failing to create a transcript, audio recording, or other record of the December 22, 2025 administrative hearing, thereby precluding meaningful judicial review.

56. Respondent's December 22, 2025 administrative hearing was conducted by a hearing officer who acted as investigator, prosecutor, and adjudicator, violating Petitioner's right to a neutral and detached decisionmaker. Haas v. County of San Bernardino, 27 Cal. 4th 1017, 1034 (2002).

57. The procedural deficiencies described in paragraphs 52 through 56 constitute egregious violations of clearly established constitutional law and cannot be characterized as mere technical irregularities.

58. As a direct and proximate result of Respondent's denial of procedural due

process, Petitioner has been deprived of the Vehicle and all property contained therein, forced into homelessness, denied access to essential medications, and subjected to ongoing financial harm, emotional distress, and risk of total property loss through lien sale.

59. Respondent's violations of Petitioner's procedural due process rights were committed pursuant to Respondent's policies, customs, and practices as alleged in paragraphs 41 through 46, thereby establishing municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

60. Respondent acted with deliberate indifference to Petitioner's clearly established constitutional rights.

**Unreasonable Continued Retention: Fourth Amendment, 42 U.S.C. § 1983 (Against the City and Defendant Munro)**

40. Plaintiff incorporates the paragraphs above.

41. A seizure that is lawful at its start can become unreasonable if it continues after its justification ends. Continued retention of an impounded vehicle is a seizure that requires its own justification.

42. Whatever justification the City once had for holding the Vehicle ended no later than when Plaintiff offered to have it removed by a licensed commercial carrier. From then on, holding the Vehicle served no safety, evidentiary, or community-caretaking purpose. Holding it only to compel payment of fees that Plaintiff cannot pay, and to compel a driving permit for a vehicle that will not be driven, is unreasonable.

43. Defendant Munro personally set the release conditions and directed or approved the continued retention after Plaintiff's offer.

44. The City is liable because the continued retention results from its policy, set or approved by its final policymaker for vehicle releases, as described above.

45. As a direct result, Plaintiff suffered the damages described below.

## VI. SECOND CLAIM FOR RELIEF

## UNREASONABLE SEIZURE UNDER THE FOURTH AMENDMENT (42 U.S.C. § 1983)

61. Petitioner incorporates by reference and realleges paragraphs 1 through 60 as though fully set forth herein.

62. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

63. The Fourth Amendment applies to the states through the Fourteenth Amendment and protects against unreasonable seizures of property by state and municipal actors. Mapp v. Ohio, 367 U.S. 643, 655 (1961).

64. The impoundment and continued retention of a motor vehicle constitutes a seizure within the meaning of the Fourth Amendment. Miranda v. City of Cornelius, 429 F.3d 858, 864 (9th Cir. 2005).

65. The reasonableness of a seizure depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by government officials. United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975).

66. While the initial impoundment of the Vehicle incident to Petitioner's arrest on December 13, 2025 may have been authorized under California law, the continued retention of the Vehicle for fifteen (15) days following the arrest, without the filing of criminal charges and following a fundamentally unfair administrative hearing, constitutes an unreasonable seizure under the Fourth Amendment.

67. Respondent lacks probable cause or any other constitutional justification for the continued retention of the Vehicle. No criminal charges have been filed against Petitioner. The arrest for violation of California Penal Code section 148(a) involved no physical resistance and arose solely from Petitioner asking questions during a traffic stop.

68. The prolonged retention of the Vehicle serves no legitimate governmental

interest and is disproportionate to any legitimate law enforcement objective.

69. Respondent's continued retention of the Vehicle has deprived Petitioner of essential property, including medications necessary for Petitioner's health and safety, thereby exacerbating the unreasonableness of the seizure. Miranda v. City of Cornelius, 429 F.3d at 865 (prolonged retention of vehicle containing personal property without adequate justification violates Fourth Amendment).

70. As a direct and proximate result of Respondent's unreasonable seizure and continued retention of the Vehicle, Petitioner has suffered the harms described in paragraph 40, including homelessness, medication deprivation, financial loss, and emotional distress.

71. Respondent's unreasonable seizure of the Vehicle was committed pursuant to Respondent's policies, customs, and practices as alleged in paragraphs 41 through 46, thereby establishing municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

72. Respondent acted with deliberate indifference to Petitioner's clearly established Fourth Amendment rights.

**VII. THIRD CLAIM FOR RELIEF**

**DECLARATORY RELIEF (28 U.S.C. § 2201)**

73. Petitioner incorporates by reference and realleges paragraphs 1 through 72 as though fully set forth herein.

74. An actual controversy exists between Petitioner and Respondent regarding the constitutionality of Respondent's vehicle impoundment administrative hearing procedures and the constitutionality of Respondent's continued retention of Petitioner's Vehicle.

75. Petitioner contends that Respondent's December 22, 2025 administrative hearing violated the Due Process Clause of the Fourteenth Amendment and that Respondent's continued retention of the Vehicle violates the Fourth Amendment.

76. Respondent contends that the administrative hearing satisfied due process

requirements and that the continued retention of the Vehicle is lawful.

77. A declaratory judgment is necessary and appropriate to resolve the actual controversy between the parties and to provide guidance regarding Respondent's constitutional obligations in future vehicle impoundment proceedings.

78. Petitioner seeks a declaration that: a. Respondent's December 22, 2025 administrative hearing violated Petitioner's right to procedural due process under the Fourteenth Amendment to the United States Constitution; b. Respondent's continued retention of Petitioner's Vehicle constitutes an unreasonable seizure under the Fourth Amendment to the United States Constitution; c. Respondent's policies, customs, and practices regarding vehicle impoundment administrative hearings, as alleged in paragraphs 41 through 46, violate the United States Constitution; d. Petitioner is entitled to immediate release of the Vehicle without payment of impoundment, towing, or storage fees arising from the constitutionally deficient administrative proceeding.

**VIII. FOURTH CLAIM FOR RELIEF**

**INJUNCTIVE RELIEF (Federal Rule of Civil Procedure 65)**

79. Petitioner incorporates by reference and realleges paragraphs 1 through 78 as though fully set forth herein.

80. Petitioner seeks preliminary and permanent injunctive relief pursuant to Federal Rule of Civil Procedure 65.

**A. Likelihood of Success on the Merits**

81. Petitioner has demonstrated a substantial likelihood of success on the merits of the procedural due process and Fourth Amendment claims.

82. The denial of notice and opportunity to be heard in the December 22, 2025 administrative hearing violates clearly established constitutional law under Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), and Mathews v. Eldridge, 424 U.S. 319 (1976).

83. The continued retention of Petitioner's Vehicle for fifteen (15) days without criminal charges, without probable cause, and following a constitutionally deficient

administrative hearing violates clearly established Fourth Amendment law under Miranda v. City of Cornelius, 429 F.3d 858 (9th Cir. 2005).

84. No reasonable governmental official could have believed that conducting an ex parte hearing without notice to the vehicle owner, without opportunity for the vehicle owner to participate, and without providing written findings, would satisfy constitutional due process requirements.

**B. Irreparable Harm Absent Injunctive Relief**

85. Absent injunctive relief, Petitioner will suffer ongoing irreparable harm that cannot be adequately remedied by monetary damages.

86. Ongoing Homelessness and Exposure: Petitioner and Petitioner's fiancée continue to be without shelter, sleeping on public sidewalks in cold weather conditions. Each additional day of homelessness increases the risk of illness, injury, and long-term health consequences. Monetary damages cannot compensate for physical suffering and health deterioration caused by prolonged homelessness.

87. Medication Deprivation and Health Risks: Petitioner has been deprived of essential prescription medications for fifteen (15) consecutive days. Petitioner's medical conditions require continuous treatment, and interruption of treatment creates serious documented health risks including rebound anxiety, panic attacks, pneumonia, or other irreversible medical consequences. The deprivation of necessary medical treatment constitutes irreparable harm. Money damages cannot restore Petitioner's health or compensate for permanent injury resulting from medication deprivation.

88. Imminent Loss of Property Through Lien Sale: Pursuant to California Civil Code section 3071, the Vehicle faces imminent risk of lien sale. The statutory deadline for lien sale is such that the Vehicle can be sold as early as the 15th day, which is December 28, 2025. Once the Vehicle is sold at lien sale, Petitioner will suffer total and irreversible loss of the Vehicle and all property contained therein. Monetary damages cannot restore unique or irreplaceable items lost through lien sale.

89. Violation of Constitutional Rights: The ongoing violation of Petitioner's

clearly established constitutional rights constitutes irreparable injury. Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (same principle applies to other constitutional violations).

90. Neurodivergence and Exacerbated Vulnerability: Petitioner and Petitioner's fiancée are neurodivergent individuals with autism spectrum disorders. The disruption of stability, routine, and access to necessary support systems creates particularly severe and long-lasting harm that cannot be adequately quantified or compensated through monetary damages.

**C. Balance of Equities Favors Injunctive Relief**

91. The balance of equities tips sharply in Petitioner's favor.

92. Petitioner faces severe and ongoing hardship, including homelessness, health deterioration from medication deprivation, and imminent total loss of property through lien sale.

93. Respondent will suffer no cognizable harm from releasing the Vehicle or providing Petitioner with immediate supervised access to retrieve essential medications and personal property.

94. Any municipal interest in collecting impoundment fees is substantially outweighed by Petitioner's fundamental constitutional rights to due process, freedom from unreasonable seizure, and access to essential medical treatment.

95. Respondent has no legitimate interest in retaining possession of the Vehicle following a fundamentally unfair administrative hearing and in the absence of any criminal prosecution arising from the underlying arrest.

**D. Public Interest Favors Injunctive Relief**

96. The public interest strongly favors the granting of injunctive relief.

97. The public has a paramount interest in ensuring that municipal governments comply with constitutional due process requirements and Fourth Amendment

protections against unreasonable seizure.

98. The public has a strong interest in preventing unlawful deprivations of property rights through constitutionally deficient administrative procedures.

99. The public has a substantial interest in protecting individuals' health and safety by ensuring access to essential medical treatment.

100. The public has a legitimate interest in reducing homelessness and preventing the human suffering associated with forced displacement.

101. No legitimate public interest is served by continuing to deprive Petitioner of the Vehicle and access to essential medications through constitutionally deficient procedures and in the absence of criminal prosecution.

**Denial of Procedural Due Process: Fourteenth Amendment, 42 U.S.C. § 1983 (Against the City and Defendant Munro)**

46. Plaintiff incorporates the paragraphs above.

47. Plaintiff has a property interest in the Vehicle. Before the government may continue to deprive a person of property, due process requires notice and a meaningful opportunity to be heard.

48. Defendants denied Plaintiff that opportunity in two ways. First, the City decided Plaintiff's post-storage challenge on December 22, 2025, without written notice, without a meaningful opportunity to present evidence, and on material Plaintiff never saw, and gave him no written decision. Second, the City and Defendant Munro have conditioned the Vehicle's release on paying $3,000 in fees without ever itemizing them or giving Plaintiff any way to contest them.

49. The City is liable because the December 22 decision was made under its procedures for post-storage hearings, and because the fee condition was set by its final policymaker for vehicle releases.

50. As a direct result, Plaintiff suffered the damages described below.

## ~~E. Specific Injunctive Relief Requested~~ DECLARATORY AND INJUNCTIVE RELIEF

~~102. Based on satisfaction of all four factors required under Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008), Petitioner requests that this Court issue the following injunctive relief: a. Temporary Restraining Order: An emergency temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b): i. Directing Respondent City of Grover Beach, its officers, agents, employees, and all persons acting in concert or participation with them, to immediately release to Petitioner the 2019 Tesla Model 3, Vehicle Identification Number 5YJ3E1EB5KF493547, without requiring payment of any impoundment, towing, or storage fees; ii. In the alternative, if immediate full release cannot be ordered without adversary hearing, directing Respondent to immediately provide Petitioner with supervised access to the Vehicle for the limited purpose of retrieving essential prescription medications and irreplaceable personal property, such access to be provided within twenty-four (24) hours of the Court's order; iii. Prohibiting Respondent, its officers, agents, employees, and all persons acting in concert or participation with them, from conducting, authorizing, or permitting any lien sale of the Vehicle pending final resolution of this action; iv. Directing Respondent to preserve all evidence related to the December 22, 2025 administrative hearing, including but not limited to any audio recordings, video recordings, written notes, documents reviewed by the hearing officer, and communications between Respondent's personnel regarding the hearing; v. Such other and further emergency relief as the Court deems just and proper to prevent immediate and irreparable harm to Petitioner.~~

~~b. Preliminary Injunction: A preliminary injunction maintaining the relief granted in the temporary restraining order pending final adjudication on the merits;~~

~~c. Permanent Injunction: Following trial on the merits, a permanent injunction: i. Requiring Respondent to release the Vehicle to Petitioner without collection of impoundment, towing, or storage fees arising from the constitutionally deficient~~

administrative proceeding; ii. Requiring Respondent to reform its vehicle impoundment administrative hearing procedures to provide constitutionally adequate notice, opportunity to be heard, neutral decisionmaker, and written findings in all future proceedings; iii. Prohibiting Respondent from conducting vehicle impoundment administrative hearings without compliance with minimum constitutional due process requirements; iv. Such other and further permanent relief as the Court deems just and proper.

51. Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201-2202 and injunctive relief as remedies for the First and Second Claims. An actual and continuing controversy exists over whether the City may keep withholding the Vehicle from a licensed commercial carrier unless Plaintiff pays storage fees and obtains a driving permit. Each day the City holds the Vehicle, it deteriorates further and Plaintiff remains without shelter. Money damages cannot fully repair that harm, so Plaintiff has no adequate remedy at law.

**DAMAGES**

52. As a direct result of Defendants' conduct alleged in the First and Second Claims, Plaintiff has suffered, and continues to suffer, the following harms. Plaintiff seeks compensatory damages from the City and Defendant Munro, jointly and severally, in an amount to be proven at trial, including:

(a) Loss of use. The loss of use of the Vehicle as transportation and shelter for the period the City has held it in violation of Plaintiff's rights, as alleged above, measured by the reasonable rental value of comparable substitute transportation and, to the extent the Vehicle served as Plaintiff's shelter, the reasonable cost of substitute lodging.

(b) Damage to the Vehicle. The reasonable cost to repair any damage to the Vehicle caused by its storage and handling while in the City's custody or control, including any damage to the battery, as shown by inspection. If the Vehicle is not returned, or cannot be economically repaired, Plaintiff seeks instead the fair market

value of his interest in the Vehicle at the time the City's retention became unlawful.

(c) Personal property. The value of personal property, including medications, that was lost, damaged, or had to be replaced because of the City's continued retention of the Vehicle.

(d) Release charges. Any towing, storage, release, or permit charges Plaintiff is required to pay as a condition of the Vehicle's release.

(e) Recovery costs. Reasonable out-of-pocket costs Plaintiff has incurred trying to recover the Vehicle.

(f) Emotional distress. Damages for emotional distress, anxiety, and disruption of Plaintiff's daily life caused by Defendants' conduct.

53. Plaintiff will provide a computation of each category of damages, with supporting documents, as required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii).

54. If Plaintiff does not prove actual injury from a constitutional violation, Plaintiff seeks nominal damages for that violation.

55. Defendant Munro acted with reckless or callous indifference to Plaintiff's federally protected rights. Plaintiff therefore seeks punitive damages against Defendant Munro in his individual capacity, in an amount sufficient to punish and deter. Plaintiff does not seek punitive damages against the City.

## IX. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Plaintiff asks the Court to enter judgment in Petitioner's his favor and against Respondent as follows: Defendants, and to award:

**A. Emergency Temporary Restraining Order**

1. Issue an emergency temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b) providing the relief specified in paragraph 102(a) above, to be effective immediately upon issuance and to remain in effect for fourteen (14) days or until further order of this Court;

**B. Order to Show Cause and Preliminary Injunction**

2. Issue an Order to Show Cause why a preliminary injunction should not issue;

3. Following hearing on the Order to Show Cause, issue a preliminary injunction maintaining the relief granted in the temporary restraining order pending final adjudication on the merits;

**C. Declaratory Relief**

4. Declare pursuant to 28 U.S.C. § 2201 that: a. Respondent's December 22, 2025 administrative hearing violated Petitioner's right to procedural due process under the Fourteenth Amendment to the United States Constitution; b. Respondent's continued retention of Petitioner's Vehicle constitutes an unreasonable seizure under the Fourth Amendment to the United States Constitution; c. Respondent's policies, customs, and practices regarding vehicle impoundment administrative hearings violate the Due Process Clause of the Fourteenth Amendment and the Fourth Amendment to the United States Constitution; d. Petitioner is entitled to release of the Vehicle without payment of impoundment, towing, or storage fees arising from the constitutionally deficient administrative proceeding;

**D. Permanent Injunctive Relief**

5. Following trial on the merits, issue a permanent injunction as specified in paragraph 102(c) above;

**E. Compensatory Damages**

6. Award Petitioner compensatory damages in an amount to be proven at trial, including but not limited to: a. Economic damages for impoundment fees, towing charges, storage fees (currently accruing at Eighty Dollars and Eighty-Three Cents ($80.83) per day), replacement costs for lost or damaged property, and replacement costs for medications; b. Non-economic damages for physical pain and suffering resulting from medication deprivation, exposure to dangerous weather conditions, and forced homelessness; c. Emotional distress, humiliation, anxiety, and mental anguish caused by constitutional violations and deprivation of property; d. Such other economic

~~and non-economic damages as may be proven at trial;~~

~~**F. Costs and Attorney Fees**~~

~~7. Award Petitioner reasonable costs of suit, including filing fees and service costs;~~

~~8. Award Petitioner reasonable attorney fees pursuant to 42 U.S.C. § 1988(b) as the prevailing party in this civil rights action, or alternatively, compensate Petitioner for the substantial time and effort expended in prosecuting this action in propria persona;~~

~~**G. Pre-Judgment and Post-Judgment Interest**~~

~~9. Award pre-judgment interest on all damages from the date of accrual at the maximum rate permitted by law;~~

~~10. Award post-judgment interest on all amounts awarded at the rate provided by 28 U.S.C. § 1961;~~

~~**H. General Relief**~~

~~11. Grant such other and further relief as this Court deems just, proper, and equitable.~~

1. A declaration that the City's continued retention of the Vehicle, after Plaintiff's offer to have it removed by a licensed commercial carrier, violates the Fourth and Fourteenth Amendments;

2. A preliminary and permanent injunction ordering the City to release the Vehicle, with its keys or key cards and any personal property inside it, to a licensed commercial carrier designated by Plaintiff, without requiring Plaintiff to obtain an operating permit or pay storage fees as a condition of release;

3. Compensatory damages against the City and Defendant Munro, jointly and severally, in an amount to be proven at trial;

4. Nominal damages for any violation for which actual injury is not proven;

5. Punitive damages against Defendant Munro in his individual capacity only;

6. Prejudgment interest as allowed by law, and post-judgment interest under 28 U.S.C. § 1961;

7. Costs of suit under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920;

8. Reasonable attorney's fees under 42 U.S.C. § 1988 if Plaintiff retains counsel; and

9. Any other relief the Court finds just and proper.

## ~~X.~~ DEMAND FOR JURY TRIAL

~~Pursuant to~~ Under Federal Rule of Civil Procedure 38(b) and ~~the Seventh Amendment to the United States Constitution, Petitioner~~ Local Rule 38-1, Plaintiff demands a jury trial ~~by jury~~ on all ~~claims and~~ issues so triable.

~~Dated: December 28, 2025~~

DATED: ______________, 2026 Respectfully submitted, ~~/s/ Christopher Scott Payne,~~ CHRISTOPHER SCOTT PAYNE, ~~Petitioner, In Propria Persona~~ Plaintiff Pro Se